UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NANCY M. COREY

        Plaintiff,

     v.                         **REPORT AND RECOMMENDATION**
                                            **08-CV-0290 (NAM)**

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.     Introduction

Plaintiff Nancy Corey brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds that the Commissioner's decision contains legal error and is not supported by substantial evidence. Therefore, the Court recommends that Plaintiff's Motion for Judgment on the Pleadings be granted in part and Defendant's Cross-Motion for Judgment on the Pleadings be denied.[2]

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated May 7, 2009.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as

## II.      Background

On March 1, 2005, Plaintiff protectively filed an application for DIB, claiming an

onset date of September 30, 2004[3] (R. at 24, 87-89).[4] Plaintiff alleges disability due to a

heart impairment, back impairment, left knee impairment, and bilateral carpal tunnel

syndrome. Her application was denied initially on July 25, 2005 (R. at 34). Plaintiff filed

a timely request for a hearing on September 8, 2005 (R. at 38).

On May 9, 2007, Plaintiff appeared before the ALJ (R. at 316). The ALJ

considered the case *de novo* and, on August 17, 2007, issued a decision finding Plaintiff

not disabled (R. at 28). The ALJ's decision became the Commissioner's final decision in

this case when the Appeals Council denied Plaintiff's request for review on February 8,

2008 (R. at 4-6). On March 13, 2008, Plaintiff filed this action.

Based on the entire record, the Court recommends remand because the ALJ

erred: in failing to fully develop the record, in failing to properly evaluate Plaintiff's back

impairment, and in failing to properly assess Plaintiff's credibility.

## III.      Discussion

### A.      Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo*

whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were

---

if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General
Order No. 18. (N.D.N.Y. Sept. 12, 2003).

[3] In Plaintiff's brief, she alleges and onset date of September 2, 2004. Defendant's Brief, p. 3. The ALJ
also states that Plaintiff's alleged onset date was September 2, 2004 (R. at 21). However, the record
indicates Plaintiff's alleged onset date was in fact September 30, 2004 (R. at 33, 68, 70).

[4] Citations to the underlying administrative record are designated as "R."

not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."

3

<u>Valente v. Sec'y of Health & Human Servs.</u>, 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process[5] to determine whether an individual is disabled as defined under the Social Security Act. <u>See</u> 20 C.F.R. §§ 416.920, 404.1520.  The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  <u>See Bowen</u>, 482 U.S. at 146 n.5; <u>Ferraris v. Heckler</u>, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  <u>See</u>

---

[5] This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); <u>see</u> also <u>Rosa v. Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

**B.    Analysis**

**1.  The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since September 2, 2004 (R. at 23); (2) Plaintiff's history of cardiomyopathy[6] and status-post cardiomyopathy as well as her status-post myomectomy[7] and mitral valve replacement are severe impairments (R. at 23); (3) Plaintiff's carpal tunnel is not severe (R. at 16); (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (R. at 25); (5) Plaintiff has the ability

> to lift or carry 10 pounds occasionally and less than 10 pounds frequently, stand or walk 2 hours in an 8-hour day and sit 6 hours in an 8-hour day and should avoid concentrated exposure to temperature extremes, high humidity, fumes, dusts, odors and gases. She could occasionally climb stairs but not ladders and scaffolds.

(R. at 25); (6) Plaintiff's statements concerning her pain and other symptoms were "not entirely credible" (R. at 217); (7) Plaintiff is capable of performing her past relevant work as a tax preparer and telemarketing supervisor (R. at 27).  Ultimately, the ALJ found that Plaintiff was not under a 'disability' as defined by the Act, from December 27, 2004, her application date, through the date of his decision (R. at 28).

---

[6] "[A] general diagnostic term designating primary noninflammatory disease of the heart muscle, often of obscure or unknown etiology and not the result of ischemic, hypertensive, congenital, valvular, or pericardial disease." *Dorland's Illustrated Medical Dictionary*, 299 (31st ed. 2007).

[7] "[S]urgical removal of a myoma," "a benign tumor made up of muscular elements." *Dorland's* at 1242.

2.      **Plaintiff's Claims:**

Plaintiff argues that the Commissioner's decision is contrary to the applicable legal standards and not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ a) failed to fully develop the record; b) erred in failing to evaluate Plaintiff's back impairment; c) failed to appropriately analyze Plaintiff's credibility d) erred in finding Plaintiff's carpal tunnel syndrome not severe; and e) erred in finding Plaintiff could perform her past relevant work as a tax preparer.

### a)  The ALJ Failed to Fully Develop the Record

Plaintiff argues that the ALJ erred in failing to adequately develop the record. Plaintiff's Brief, pp. 16, 18-19. Specifically, Plaintiff argues that the ALJ erred in failing to obtain i) treatment notes and a functional assessment from Dr. Fredrickson; ii) treatment notes from Dr. Sharma; and iii) a functional assessment from Dr. Byrne. Id.

### i)  The ALJ Erred in Failing to Contact Dr. Fredrickson

Plaintiff argues that the ALJ erred in failing to obtain treatment notes and a functional assessment from Dr. Fredrickson. Plaintiff's Brief, pp. 18-19. Defendant responds by arguing that the record contains few low back pain complaints from Plaintiff after her onset date and Dr. Fredrickson was not listed as a medical source. Defendant's Brief, p. 12.

The ALJ has an affirmative duty to develop the record. Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982). This duty exists regardless of whether Plaintiff has counsel or is continuing *pro se*. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). If the evidence received is not adequate to determine whether an

individual is disabled, additional information must be gathered by first re-contacting Plaintiff's treating physician. 20 C.F.R. § 404.1512(e)(1).

"The duty to develop the record is 'particularly important' when obtaining information from a claimant's treating physician due to the 'treating physician' provisions in the regulations." Dickson v. Astrue, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (citing Devora v. Barnhart, 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002)). Because of this 'particularly important' duty, the ALJ has an affirmative obligation to make reasonable efforts to obtain from Plaintiff's treating physicians any necessary reports, including an assessment of Plaintiff's functional abilities. Dickson, 2008 WL 4287389, at *13. The ALJ also has a duty to re-contact a treating source if "the report from [the] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1).

Dr. Byrne, Plaintiff's treating physician, referred Plaintiff to Dr. Fredrickson on February 2, 2004, for low back pain (R. at 183). Dr. Byrne made the referral because "[e]pidurals really did not help, and a MRI of 9/10/03 showed spinal stenosis[8] at L4-L5 considered moderately severe, and narrowing of the spinal canal." Id. Treatment notes from Dr. Byrne also indicate that Dr. Fredrickson had some involvement in treating Plaintiff's carpal tunnel impairment (R. at 181). Dr. Fredrickson is also mentioned on several other occasions in Dr. Byrne's treatment notes (R. at 180, 182, 183). No treatment notes or opinions appear from Dr. Fredrickson in the record. The ALJ made no mention of Dr. Fredrickson nor does it appear that the ALJ contacted Dr. Fredrickson

---

[8] "[A]n abnormal narrowing of a duct or canal." Dorland's at 1795.

for the missing documents. As Dr. Fredrickson appears to have been Plaintiff's treating physician for her back impairment, the missing documents constitute a gap in the record that must be remedied. See Metaxotos v. Barnhart, 2005 WL 2899851, at *5 (S.D.N.Y. Nov. 3, 2005) (remanding where the Commissioner conceded that the ALJ failed to develop the record by not obtaining treatment notes, records, or opinions from Plaintiff's treating psychiatrist); Aiello v. Comm'r of Soc. Sec., 2009 WL 87581, at *5, n. 2 (N.D.N.Y. Jan. 9, 2009) (where "a treating physician noted that there was a history of fibromyalgia and chronic fatigue syndrome [and] such was not reflected in the medical records provided, the ALJ should have attempted to contact that physician to discover any pertinent medical records that could relate to such conditions.").

    Defendant argues that the record "does not reflect any significant complaints or treatment for a back impairment" after Plaintiff's alleged onset date. Defendant's Brief, p. 12. However, Defendant's argument is unavailing.  It seems logical that Plaintiff would complain to Dr. Frederickson, the physician treating her back impairment, and any treatments for that ailment would come from him. As for Defendant's second argument, the Court acknowledges that Plaintiff did not list Dr. Fredrickson as a medical source in a disability form she completed (R. at 76-77); Defendant's Brief, p. 12. However, given the significant number of instances in which Dr. Fredrickson was mentioned in the record, the Court cannot find that the Plaintiff's failure to include his name absolves the ALJ of his duty to fully develop the record. Clearly there was a gap in the record and the ALJ failed to fulfill his duty by contacting Dr. Fredrickson for the missing medical records and an opinion of Plaintiff's functional abilities.

### ii)  The ALJ Erred in Failing to Re-Contact Dr. Sharma

Plaintiff argues that the ALJ erred in failing to obtain treatment notes from Dr. Sharma. Plaintiff's Brief, pp. 18-19. Defendant argues that Dr. Sharma and Dr. Godishala[9] were associated with the same facility, Auburn Cardiology Associates ("ACA"), and treatment notes from ACA are consistent with Dr. Sharma's opinions. Defendant's Brief, pp. 11-12.

Cardiologist, Dr. Sharma, completed a cardiac medical source statement ("MSS") on April 3, 2007 (R. at 287-91). In that report, Dr. Sharma indicated that he had begun treating Plaintiff in December 2006, after Plaintiff was discharged from Dr. Godishala's care (R. at 291). However, there are no treatment notes or records from Dr. Sharma. There is no indication that the ALJ attempted to re-contact Dr. Sharma for those treatment notes. Thus, a gap consisting of Plaintiff's entire treatment history with Dr. Sharma exists in the record. This gap necessitated re-contacting Dr. Sharma. See Longbardi v. Astrue, 2009 WL 50140 at *26 (S.D.N.Y. Jan. 7, 2009) (internal citations removed) (finding "a 'clear gap' in the record" where a treating physician "indicated that he examine[d] plaintiff every two months, [but] his progress notes skip from sometime in 2003 to September 27, 2004"); see also 20 C.F.R. § 404.1512(e)(1) (re-contact is required if the report from a treating physician "does not contain all the necessary information"). The ALJ erred when he failed to attempt to obtain those treatment notes from Dr. Sharma.

### iii) The ALJ Erred in Failing to Re-Contact Dr. Byrne

---

[9] Plaintiff was discharged by Dr. Godishala on October 20, 2006, because Plaintiff had continually failed to obtain blood work and was non-compliant with her medication (R. at 241-42, 243, 244).

Plaintiff argues that the ALJ erred in failing to obtain a function-by-function assessment from Dr. Byrne. Plaintiff's Brief, pp. 16, 18-19.[10] Defendant responds by arguing that Plaintiff's medical treatment with Dr. Byrne was complete and there was no need to re-contact. Defendant's Brief, p. 12.

Although somewhat unclear, it appears that Plaintiff first saw Dr. Byrne on November 16, 2000 (R. at 191). Dr. Byrne originally treated Plaintiff's back impairment, but ultimately referred her to Dr. Fredrickson (R. at 189, 185, 184, 183). Plaintiff's first complaint of carpal tunnel occurred on August 16, 2004 (R. at 180). Dr. Byrne performed right carpal tunnel decompression surgery on November 16, 2004 (R. at 123). On January 24, 2005, Dr. Byrne found a "full [range of motion] in her fingers [and] [s]ensation [wa]s intact to light touch" (R. at 168). At that point, Dr. Byrne opined that Plaintiff's "numbness will go away over the course of 6 months to a year if it is going to go away at all." Id. He then released her to full duty work and noted that "[t]his represents the discontinuation of orthopedic care for this injury." Id.

In the course of treating Plaintiff for her back pain and carpal tunnel syndrome, Dr. Byrne offered several medical opinions that can be found in his treatment notes, including diagnosing Plaintiff with bilateral carpal tunnel syndrome and chronic low back pain (R. at 180). However, Dr. Byrne's treatment notes do not contain functional assessments of Plaintiff's bilateral carpal tunnel syndrome and back impairment. Dr.

_____

[10] Plaintiff argues that the ALJ erred in failing to obtain an updated opinion of Plaintiff's carpal tunnel impairment. Plaintiff's Brief, p. 16. However, Dr. Byrne never supplied a functional assessment of Plaintiff's carpal tunnel syndrome. Plaintiff also argues that the ALJ erred in failing to obtain a function-by-function assessment from a treating physician, other than Dr. Sharma, Plaintiff's cardiologist. Plaintiff's Brief, pp. 18-19. The Court assumes Plaintiff is arguing a failure to obtain a functional assessment from Dr. Byrne because Plaintiff makes separate arguments concerning Dr. Sharma, Plaintiff's cardiologist, and Dr. Fredrickson, Plaintiff's treating physician for her back impairment. Plaintiff's Brief, pp. 18-19.

Byrne also did not supply an assessment of Plaintiff's functional limitations. The Court acknowledges that Dr. Byrne released Plaintiff to full duty work (R. at 168). However, this opinion appears to be directed solely at Plaintiff's right carpal tunnel syndrome, not her left carpal tunnel syndrome (R. at 168). Plaintiff's carpal tunnel in her left wrist is well documented in the record, although the carpal tunnel syndrome in Plaintiff's right wrist was deemed more severe. For example, on September 3, 2004, Dr. Byrne noted that nerve conduction studies showed "mild to moderate" carpal tunnel syndrome in her left wrist and "moderately severe on the right" (R. at 179). On September 3, 2004, Dr. Byrne found that carpal tunnel decompression surgery, for the right wrist and hand, "[c]ertainly . . . should be done and the left side could be done" (R. at 180). On September 16, 2004, Dr. Byrne diagnosed Plaintiff with "[b]ilateral carpal tunnel syndrome" (R. at 178).

The Court also notes that Dr. Byrne continued to prescribe medications for Plaintiff's back impairment, although Dr. Frederickson appears to have been the specialist treating that impairment (R. at 178, 167). Thus, the record indicates that Dr. Byrne continued to be involved in the treatment for Plaintiff's back impairment. As such, Dr. Byrne would likely have direct knowledge of any functional limitations resulting from Plaintiff's back impairment.

Thus, the ALJ erred in failing to re-contact Dr. Byrne for an assessment of Plaintiff's back impairment and bilateral carpal tunnel syndrome. See Bennett v. Astrue, 2009 WL 1035106, at *11 (N.D.N.Y. Apr. 17, 2009) ("Remand is necessary if the ALJ fails to attempt to contact the plaintiff's treating physician to properly determine her RFC.").

Based on the foregoing, the Court recommends remand to allow the ALJ to contact Dr. Fredrickson to obtain treatment notes and a functional assessment of Plaintiff's back impairment; to re-contact Dr. Sharma to obtain treatment notes; and to re-contact Dr. Byrne to obtain a functional assessment of Plaintiff's carpal tunnel syndrome and back impairment.

### b)  The ALJ Erred in Evaluating Plaintiff's Back Impairment

Plaintiff argues that the ALJ erred in failing to evaluate her back impairment. Plaintiff's Brief, pp. 16-17. Defendant argues that Plaintiff had not complained of back pain after her alleged onset date, and both the examining physician and disability analysis found no back impairments or limitations. Defendant's Brief, p. 6.

An ALJ is instructed to consider impairments of which a claimant has complained, or about which the ALJ has received evidence. See 20 C.F.R. § 404.1512 ("We will consider only impairment(s) you say you have or about which we receive evidence."). The ALJ's decision in the present case suggests that he did not consider Plaintiff's back impairment. The ALJ's sole statement concerning Plaintiff's back impairment occurred in his credibility analysis (R. at 27). After noting Plaintiff's testimony of back pain, the ALJ stated that "there are no reported complaints to any treating source of low back pain." Id. The ALJ's statement suggests that he found no evidence of Plaintiff's back pain in the record and therefore did not consider any impairments causing that pain. However, Plaintiff's complaints of back pain to treating sources are well documented in the record (R. at 189, 186, 184, 183, 183, 182).

Moreover, Plaintiff's subjective complaints are not the only evidence of her back impairment. As previously noted, Plaintiff was referred to Dr. Fredrickson specifically for

12

back pain (R. at 183). There is also clinical evidence supporting Plaintiff's claim of back pain. For example, according to Dr. Byrne, an MRI on September 19, 2003, showed "moderately severe osteoarthritic[11] changes of the facets,[12] degenerative stenosis[13] at L3-4 and L4-5, L3-4 mild to moderate, L4-5 moderately severe" (R. at 186). Moreover, on April 23, 2004, Mr. Douglas Seyfried conducted an ergonomic evaluation at the request of Plaintiff's VESID[14] counselor based upon her back pain to improve Plaintiff's performance at work (R. at 283-86). Plaintiff testified the evaluation was initiated because of her back pain (R. at 332). On May 3, 2004, Dr. Byrne noted that VESID had ordered a special chair for Plaintiff to use at work in the hope that this would improve her low back pain (R. at 182).

Thus, the ALJ had objective medical evidence supporting Plaintiff's subjective complaints of back pain but failed to consider that impairment. Therefore, the Court recommends remand to allow the ALJ an opportunity to appropriately consider Plaintiff's back impairment. See Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (internal citations removed) (remand is appropriate to obtain "further findings or a clearer explanation for the decision" when the Court is "unable to fathom the ALJ's rationale in relation to evidence in the record").

### c)  The ALJ's Credibility Analysis is Flawed

---

[11] "[A] noninflammatory degenerative joint disease . . ., characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain, usually after prolonged activity, and stiffness, particularly in the morning or with inactivity." *Dorland's* at 1365.

[12] "[A] small plane surface on a hard body, as on a bone." *Dorland's* at 676.

[13] "[A]n abnormal narrowing of a duct or canal." *Dorland's* at 1795.

[14] Vocational and Educational Services for Individuals with Disabilities. Vocational and Educational Services for Individuals with Disabilities (VESID), *NYSED.gov*, http://www.vesid.nysed.gov/.

Plaintiff argues that the ALJ erred in assessing her credibility. Plaintiff's Brief, pp. 19-22.

"[A] claimant's subjective evidence of pain is entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. U.S. R.R. Retirement Bd., 982 F.2d 49, 56 (2d Cir. 1992) (citations omitted). "However, the ALJ is 'not obliged to accept without question the credibility of such subjective evidence.'" Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) (quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979)). In analyzing credibility, the ALJ must first determine whether the claimant has medically determinable impairments, "which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); S.S.R. 96-7p, 1996 WL 374186, at *2. Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. S.S.R. 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c); Borush v. Astrue, 2008 WL 4186510, at *12 (N.D.N.Y. Sept. 10, 2008). Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," S.S.R. 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations.[15] 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

The ALJ completed the two-step analysis by finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged

---

[15] The listed factors are: (i) claimant's daily activities; (ii) location, duration, frequency, and intensity of claimant's symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (v) other treatment received to relieve symptoms; (vi) any measures taken by the claimant to relieve symptoms; and (vii) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii).

symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (R. at 27). However, the ALJ failed to engage in any meaningful analysis of the factors.

The ALJ's credibility analysis consists almost entirely of a recitation of Plaintiff's testimony at the hearing. Although that recitation included Plaintiff's testimony of her daily activities, there was no analysis as to whether the daily activities were in line with her alleged disability.

The ALJ's sole comparison of Plaintiff's testimony to her medical record consists of the comment that "[i]t should be noted that there are no reported complaints to any treating source of low back pain." Id. As previously stated, this finding is flawed because the record documents several complaints of back pain (R. at 189, 186, 184, 183, 183, 182); Supra Part III.B.2.b.

Therefore, the Court recommends remand to allow the ALJ an opportunity to re-evaluate Plaintiff's credibility in accordance with the previously stated law.

### d)    Plaintiff's Carpal Tunnel Syndrome

Plaintiff also argues that the ALJ erred in finding her carpal tunnel impairment not severe. Plaintiff's Brief, pp. 15-17. Because the Court has previously found the ALJ erred by not re-contacting Dr. Byrne for a functional assessment, the Court cannot reach whether the ALJ's finding of non-severe is supported by substantial evidence. Allegation (a)(iii); (R. at 24).

### e)    The ALJ Erred in Finding Plaintiff Could Perform Her Past Relevant Work as a Tax Preparer

Plaintiff's final argument is that the ALJ's finding that Plaintiff could perform her past work as a tax preparer is inconsistent with his step one finding that this position did

not qualify as substantial gainful activity. Plaintiff's Brief, pp. 22-23. Plaintiff also argues that the ALJ did not adequately explain how Plaintiff was capable of performing her past relevant work. Id.

Because of previous errors in the ALJ's decision, the Court need not reach whether his findings at step four of the sequential evaluation are supported by substantial evidence. However, the Court notes the following error:

At step one, the ALJ found that Plaintiff's past work as a tax preparer did not constitute substantial gainful activity (R. at 23). The ALJ later found at step four that Plaintiff could perform her past relevant work as a tax preparer (R. at 27). Past relevant work is defined as work performed "*within the last 15 years,* lasted long enough for you to learn to do it, *and was substantial gainful activity.*" Melville v. Apfel, 198 F.3d 45 (2d Cir. 1998) (quoting SSR 82-62, 1982 WL 31386, at *1 (S.S.A.)) (emphasis in original); see also 20 C.F.R. 404.1560(b). Because Plaintiff's work as a tax preparer was deemed not substantial gainful activity, it cannot also be past relevant work. Thus, the ALJ erred in finding that Plaintiff could perform her past work as a tax preparer because that work was not 'relevant.'

Therefore, on remand, the ALJ should not find that Plaintiff can perform her past relevant work as a tax preparer because that work appears not to be substantial gainful activity.


# IV.   Conclusion

Based on the foregoing, the Court recommends that the Commissioner's decision denying disability benefits be REMANDED for further proceedings in

accordance with this recommendation and pursuant to sentence four of 42 U.S.C.

Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge


DATED:          Syracuse, New York
                November 20, 2009

## ORDER

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby


**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.


**ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of

Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v.*

*Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v.*

*Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


            Syracuse, New York
DATED:      November 20, 2009